IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) No. 23 CR 156 |
| | ) |
| XAVIER JOHNSON. | ) Judge Virginia M. Kendall |
| | ) |

**MEMORANDUM OPINION AND ORDER**

A federal grand jury indicted defendant Xavier Johnson, a convicted felon, for the unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Johnson now moves to dismiss the indictment, arguing that the charges against him violate the Second Amendment. [24] For the following reasons, the Court denies the motion.

**BACKGROUND**

On August 28, 2022, law enforcement recovered a loaded pistol from Johnson after he fled from the officers' attempt to conduct a field interview with him. (Dkt. 27 at 1). At the time of the arrest, Johnson had two felony convictions in Illinois: a 2019 conviction for being a felon in possession of a firearm and a 1997 conviction for homicide. (*Id.*) On March 20, 2023, a grand jury indicted Johnson with one count of unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). (*Id.* at 1–2).

**LEGAL STANDARD**

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits," Fed. R. Crim. P. 12(b)(1), such as a constitutional violation. *United States v. Holloway*, 74 F.3d 249, 253 (11th Cir. 1996). When considering a motion to dismiss a criminal indictment, the Court assumes all facts are true and views them in the

1

light most favorable to the government. *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) (per curiam) ("An indictment is reviewed on its face, regardless of the strength or weakness of the government's case.").

## **DISCUSSION**

This Court recently addressed two motions to dismiss an indictment that argued the Supreme Court's holding in *New York State Rifle & Pistol Association v. Bruen* rendered § 922(g)(1) unconstitutional as applied to a defendant convicted of violent felonies. *See* Order, *United States v. Clark*, No. 20 CR 805, No. 146 (N.D. Ill. Sept. 7, 2023); *United States v. Dixon*, No. 22 CR 140, 2023 WL 2664076 (N.D. Ill. Mar. 28, 2023) (Kendall, J.). In both cases, the Court ruled that § 922(g)(1) remains constitutional under *Bruen* and denied the motions to dismiss. The Court sees no reasons to deviate from its past decisions.

The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court in *Bruen* established the new test for assessing the constitutionality of firearm regulations, holding that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 142 S. Ct. 2111, 2129–30 (2022). The government then bears the burden of "affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

Under *Bruen*'s test, the Court will first address whether Johnson's alleged conduct is covered under the plain text of the Second Amendment. If yes, the Court will then evaluate whether

the government has met its burden to show that § 922(g)(1) is consistent with "this Nation's historical tradition of firearm regulation." *Id.* at 2126.

I. **Plain Text**

The "people" of the Second Amendment are not dangerous felons, so the restriction of their rights to bear arms is not an infringement on the Constitution. The Supreme Court in *District of Columbia v. Heller* analyzed the text, history, and tradition of the Second Amendment and concluded that the right to bear arms extends only to "law-abiding citizens" as it "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. 570, 625, 635 (2008). Two years later, *McDonald v. City of Chicago* pointedly stated that its holding "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill.'" 561 U.S. 742, 786 (2010) (quoting *Heller*, 554 U.S. at 626). And *Bruen* reaffirmed this principle from *Heller* and *McDonald*, characterizing the Second Amendment as a right belonging to "law-abiding" citizens 14 times. *See e.g.*, *Bruen*, 142 S. Ct. at 2156 (holding that the New York firearm statute "violates the Fourteenth Amendment in that it prevents *law-abiding citizens* with ordinary self-defense needs from exercising their right to keep and bear arms") (emphasis added); *see also id.* at 2122, 2125, 2131, 2133–34, 2135 n.8, 2138 & n.9, 2150.

In his motion to dismiss, Johnson asks this Court to cast aside the unequivocal statements in three Supreme Court cases on the Second Amendment because they are dicta. *See United States v. Meza-Rodriguez*, 798 F.3d 664, 669 (7th Cir. 2015) ("While some of *Heller*'s language does link Second Amendment rights with notions of 'law-abiding'…those passages do not attempt to reflect an attempt to define the term 'the people.' We are reluctant to place more weight on these passing references than the Court itself did."). Instead, Johnson relies on *Range v. Attorney*

3

*General United States of America*, a Third Circuit case, to show that "the people" do include individuals with prior felony convictions. 69 F.4th 96, 103 (3d Cir. 2023). This Court does not find the reasoning of *Range*, an out-of-circuit case, persuasive because its holding was narrowly crafted to specifically address whether the plaintiff, a non-violent felon, was protected by the Second Amendment as opposed to a violent felon.[1] *Id.* at 106. Moreover, Range's criticism of the phrase "law-abiding, responsible citizen" as vague and susceptible to many interpretations is an unnecessary line-drawing exercise. *See id.* at 102 ("We are confident that the Supreme Court's references to 'law-abiding, responsible citizens' do not mean that every American who gets a traffic ticket is no longer among 'the people' protected by the Second Amendment."). No matter the contours of that vague phrase's meaning, certainly, a violent felon convicted of murder is beyond its ambit.

*Meza-Rodriguez* is also unhelpful because the Seventh Circuit acknowledged that *Meza-Rodriguez* was decided without the benefit of *Bruen* and thus, does not control whether Johnson's § 922(g)(1) conviction is constitutional under *Bruen*. *Atkinson v. Garland*, 70 F.4th 1018, 1023 (7th Cir. 2023). Moreover, *Heller*'s statement—that the Second Amendment protects only law-abiding people—can no longer be considered a "passing reference" by the Supreme Court. Evaluating *Heller*, *McDonald*, and *Bruen* as a whole, the Supreme Court has repeatedly asserted and guaranteed that the Second Amendment protects law-abiding citizens, not convicted felons. Several concurring justices in *Bruen* even went out of their ways to reiterate this principle. *See Bruen*, 142 S. Ct. at 2159 (Alito, J., concurring) ("All that we decide in this case is that the Second

---

[1] Some courts have suggested that the Second Amendment protects nonviolent felons. *See Heller v. District of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011); *see also Vincent v. Garland*, No. 21-4121, 2023 WL 5988299, at *4 (10th Cir. Sept. 15, 2023) ("But does the term *the people* include individuals convicted of nonviolent felonies? The answer is debatable.") (Bacharach, J., concurring). The Court does not need to address this difficult question now because Johnson is a violent felon.

Amendment protects the right of law-abiding people to carry a gun outside the home for self-defense"); *id.* at 2162 (Kavanaugh, J., concurring) ("Nothing in [*Bruen*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." (quoting *Heller*, 554 U.S. at 626)). And while there is no binding precedent on whether the Second Amendment's plain text covers convicted felons' possession of firearms, Johnson has not pointed to any Supreme Court case preceding *Heller* where the Supreme Court indicated convicted felons' possession of firearms *is* covered by the Second Amendment. As such, the Supreme Court's continuous reaffirmations strongly signal that its "dicta" is not something for lower courts to ignore. Absent any binding precedent to the contrary, the Supreme Court's statement that the Second Amendment does not protect convicted felons is persuasive. Thus, the plain text of the Second Amendment does not protect Johnson.

## II.    Historical Traditions

Assuming the Second Amendment's plain text does cover Johnson, the government has still met its burden in showing that § 922(g)(1) is consistent with "this Nation's historical tradition of firearm regulation" and does not violate the Second Amendment. *Id.* at 2126. After *Bruen*, the Seventh Circuit clarified that a district court must engage in a "proper, fulsome analysis of the historical tradition supporting § 922(g)(1)" to determine if "modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is justified." *Atkinson*, 70 F.4th at 1021–22 (quoting *Bruen*, 142 S. Ct. at 2133). Thus, the government must present historical analogues to show there is a tradition of limiting the right to keep and bear arms that is aligned with § 922(g)(1).

In *United States v. Gates*, another court in this District, relying on near-identical government briefing as the one filed here, persuasively explained why § 922(g)(1) is consistent

with the Nation's historical tradition of firearm regulation. No. 1:22-CR-00397-1, 2023 WL 5748362, at *5–9 (N.D. Ill. Sept. 6, 2023). The government offers two categories of historical analogues to modern-day-felony dispossession statutes: (1) "laws categorically disqualifying groups who were untrustworthy adherents to the law from possessing firearms" and (2) "laws authorizing capital punishment and estate forfeiture for felonies." (Dkt. 27 at 16).

First, the government presents evidence that seventeenth century England disarmed Catholics because England deemed them as untrustworthy to adhere to the rule of law. Similarly, several colonial American legislatures passed dispossession regulations targeting Native Americans and enslaved Black people, groups who were deemed dangerous to society at the time. Notably, the colonies disarmed members of the political community, including "free, Christian, white men," "whom the authorities believed could not be trusted to obey the law"—in other words, felons. *See* Nicholas J. Johnson, et al., *Firearms Law and the Second Amendment: Regulation, Rights, and Policy* 174 (3d ed. 2022)). This concept of dispossessing dangerous members of society carried into the ratification debates surrounding the Second Amendment. *See Bruen*, 142 S. Ct. at 2136 ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them.") (quoting *Heller*, 554 U.S. at 634–35)). For example, during the Constitutional Convention in 1787, the Antifederalists proposed a constitutional amendment regarding the right to bear arms that was the predecessor to the Second Amendment. 2 Bernard Schwartz, *The Bill of Rights: A Documentary History* 627, 628 (1971). The Antifederalists proposed that "no law shall be passed for disarming the people or any of them *unless for crimes committed, or real danger of public injury from individuals*." *Id.* at 665 (emphasis added). Thus, the Founders recognized that individuals who commit crimes or pose a danger to society should not be protected by the Second Amendment. *See e.g.*, *United States v. Jackson*, 69 F.4th 495, 503

6

(8th Cir. 2023) ("In the era of the Revolutionary War, the Continental Congress, Massachusetts, Virginia, Pennsylvania, Rhode Island, North Carolina, and New Jersey prohibited possession of firearms by people who refused to declare an oath of loyalty.").

Johnson disputes these analogues as not "distinctly familiar" or "relevantly similar" to the modern-day felony dispossession under § 922(g)(1) and asserts that the government has failed to show historical evidence suggesting that felons specifically were disarmed. For example, he argues that the English and American colonial laws did not disarm untrustworthy individuals who may have broken the law—only those who engaged in seditious activity and treasonous revolt. But engaging in seditious activity and treasonous revolt is a felony. At best, Johnson has shown the upper bounds of when firearm dispossession was appropriate. But his arguments do not cast doubt on the fact that England and colonial America had also disarmed dangerous individuals. Furthermore, Johnson misunderstands the government's burden. *Bruen* "requires only that the government identify a well-established and representative historical analogue, not a historical twin." 142 S. Ct. at 2133. So a failure to show a historical dispossession specifically referencing "felon" is not dispositive; the government has, however, convincingly shown a historical tradition of disarming dangerous and rebellious individuals who would fall under today's definition of a violent felon.

Next, the government cites to historical regulations where the colonies punished felons through capital punishment, estate forfeiture, or both. *See Baze v. Rees*, 553 U.S. 35, 94 (2008) (Thomas, J., concurring in judgment) (commenting that capital punishment for felonies were ubiquitous during the 18th century and was the standard penalty for all serious crimes) (citing Stuart Banner, *The Death Penalty: An American History* 23 (2002)); *Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019) (finding capital punishment and forfeiture of estate were commonly

7

authorized punishments in the colony). The First Congress, which drafted and proposed the Second Amendment, made several felonies, including nonviolent felonies like forgery, punishable by death. *See An Act for the Punishment of Certain Crimes Against the United States*, 1 Stat. 112–15 (1790). Therefore, common sense dictates that firearm dispossession for felons is a "comparable burden on the right of armed self-defense" when the historical alternatives were death or surrendering one's assets. Reviewing these historical analogues together, the Court finds the government has adequately demonstrated that § 922(g)(1) "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2117.

## CONCLUSION

For these reasons, the Court denies Johnson's Motion to Dismiss. [24]

_____
Virginia M. Kendall
United States District Judge

Date: September 26, 2023